F I L E D
Clerk
District Court

FEB 09 2024

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

GODFREY MENDIOLA,

      Plaintiff,

      v.

VINCENT ATTAO, GREGORIO CASTRO,
GEORGIA CABRERA, WALLY
VILLAGOMEZ, ROBERT GUERRERO,
PETE SOMORANG, *et al.*,

      Defendants.

Case No. 1:21-cv-00028

**DECISION AND ORDER GRANTING DEFENDANT SOMORANG'S MOTION FOR SUBSTITUTION AND DISMISSAL OF STATE LAW TORT CLAIMS, AND DENYING MOTION TO DISMISS CONSTITUTIONAL VIOLATION CLAIMS**

      Before the Court is Defendant Pete Somorang's ("Somorang") Motion for Substitution and Motion to Dismiss ("Mot.," ECF No. 42) supported with a Memorandum of Points and Authorities (Mem. P. & A., ECF No. 42-1) and Certificate of Scope of Employment (ECF No. 42-2). Pro se Plaintiff Godfrey Mendiola ("Mendiola") did not file an opposition brief. Somorang requested that the motion be decided without a hearing, which the Court granted. (ECF Nos. 46, 47.) Based on the controlling authorities and the record in this case, the Court hereby GRANTS Somorang's Motion for Substitution and Motion to Dismiss the state law tort claims but DENIES the motion as to the civil rights claims under 42 U.S.C. § 1983 and the Commonwealth of the Northern Mariana Islands ("CNMI") Constitution. The Court sets forth its reasoning below.

## I.    FACTUAL AND PROCEDURAL HISTORY

      Mendiola is a former inmate with the CNMI Department of Corrections ("DOC") who filed an in forma pauperis application (ECF No. 1) and a pro se complaint (ECF Nos. 2 (court

complaint form), 2-1 (written complaint)). The Court issued its screening order granting Mendiola in forma pauperis status and finding that his complaint passed screening as against certain DOC officers for (1) § 1983 claims for failure to protect and deliberate medical indifference regarding Mendiola's physical, dental, and mental health needs in contravention of the Eighth Amendment to the U.S. Constitution and (2) state law claims for deliberate medical indifference and inadequate medical care based on Article I § 4 of the CNMI Constitution and tort claims for gross negligence and intentional infliction of emotional distress. (Screening Order 1-2, ECF No. 3.)

Mendiola alleges Somorang, along with DOC officers, failed to provide Mendiola adequate medical care. (Compl. ¶¶ 54-74, 87-89.) In October 2019, Mendiola claims he submitted a sick call in which he complained of severe headaches, dizziness, blurry eyesight, and excruciating back pain. (*Id.* ¶ 54.) His condition worsened such that by January 2020, he could not perform any physical activity, sit, stand, or lay down without experiencing severe back pain. (*Id.* ¶ 61.)  On April 30, 2020, after six months of excruciating pain, Mendiola was diagnosed with a spinal degenerative disease. (*Id.* ¶ 71.) Two months later, in June 2020, Mendiola was given Naproxen 500 on an as needed basis only. (*Id.* ¶ 75.)

Beginning in July 2020, Mendiola started recording instances in which he requested his Naproxen medication but DOC officers either did not provide or refused to provide the requested medication. (*Id.* ¶ 76.) Whenever his medication was not delivered despite his request, he suffered pain all night. (*Id.* ¶ 79-81, 83, 85.) On August 6, 2020, Mendiola wrote a grievance regarding missing medications, and Pod Commander CO3 Pete Somorang assured him that DOC would ensure proper and timely distributions of medication. (*Id.* ¶ 82.) DOC Officer Peter Lieto represented to Mendiola that only commanders have access to his medication at the medical office. (*Id.* ¶ 78.)

Despite Commander Somorang's assurance, for months thereafter, Mendiola documented numerous instances in which this failure to provide medications occurred. (*Id*. ¶¶ 75-86, 90-108.) These medications included Naproxen 500 (*see id*. ¶ 103), Bengay ointment (*id*. ¶ 104), and depression medication (*id*. ¶ 107). In April 2021, Mendiola wrote a sick call complaint for his depression medication. (*Id*. ¶ 107.) Between the time he spoke to Somorang in August 2020 and the last sick call complaint he submitted in April 2021, Mendiola does not indicate whether he submitted any other grievance or complaint.

In its screening order, this Court concluded that the complaint states four plausible causes of action against Somorang: a § 1983 of the Civil Rights Act claim for the right to be free from deliberate medical indifference pursuant to the Eighth Amendment to the U.S. Constitution; the right to be free from cruel and unusual punishment pursuant to the Commonwealth Constitution; and state law claims of negligence and intentional infliction of emotional distress. (Screening Order 39.)

Based on the complaint, this Court found that Mendiola suffered a serious medical need for spinal degenerative disease and spinal arthritis. (*Id*. 24 (citing Compl. ¶¶ 71, 87).) The former was diagnosed in April 2020 (Compl. ¶ 71), and the latter in September 2020 (*id*. ¶ 87). The treatment recommended was spinal shots and physical therapy. (*Id*.) However, the only pain medication he was able to receive to address the pain while at the DOC was Naproxen 500 mg. (*Id*. ¶ 75.) Despite Somorang's awareness of the missed medications and Somorang's assurance to Mendiola that he would receive proper and timely medication distributions, the Court found that for nine months thereafter, Mendiola continued to miss medication after having requested for it, all the while experiencing severe pain. (*Id*. ¶¶ 84-108.) Based on these facts, the Court found Somorang deliberately indifferent and liable as a supervisor and that Mendiola sufficiently

established a claim of deliberate indifference against Commander Pete Somorang under a theory of respondeat superior. (Screening Order 22.)

## II.   LEGAL STANDARD

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

A defendant may move to dismiss a claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) motions are either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the propriety of jurisdiction is determined based solely on the allegations of the complaint. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039-40 n.2 (9th Cir. 2003). On the other hand, in a factual challenge, once the moving party "present[s] affidavits and other evidence . . . the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id*. In Somorang's motion to dismiss, he makes a factual attack on the state tort claims, and a facial attack on the constitutional violations claims.

### B. Rule 12(b)(6) – Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc*., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal of the complaint or any claim within it, may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of

4

what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

## III.    DISCUSSION

### A.  Subject Matter Jurisdiction

The Government Liability Act of 1983 ("GLA"), as amended, *see* 7 CMC §§ 2201-2210, protects CNMI government employees from the expense of defending lawsuits for conduct while acting within the scope of their employment. *See Norita v. Commonwealth*, No. 18-cv-00022, 2019 WL 150875, at *2 (D. N. Mar. I. Jan. 10, 2019) (citing *Kabir v. Commonwealth Pub. Sch. Sys.*, 2009 MP 19 ¶ 25). The GLA authorizes the CNMI Attorney General to certify that an employee was acting within the scope of employment, after which the CNMI government is substituted in for the employee in the lawsuit. *Id.* "[T]he proceeding continues in the same manner as any action against the government," and "the litigation is thereafter governed by the [GLA]." *Id*.

Importantly, "the Attorney General's certification is judicial[ly] reviewable and may be disproved by a preponderance of the evidence." *Norita*, 2019 WL 150875, at *3. The Court is tasked with reviewing whether the plaintiff has alleged sufficient facts to show that the defendant has exceeded the scope of his or her employment. *See id.* at *4-5. In *Norita*, the court concluded that substitution was proper because the officers "pursued and arrested Norita after a failed traffic stop." *Id*. at *5. "[T]he facts as alleged by Plaintiff indicate that Defendants . . . were engaged in police work at the time of the conduct in question. Plaintiff has neither challenged the certification

5

1   nor alleged sufficient facts to create a genuine factual dispute material to the scope of employment

2   issue." *Id*.

3        Once substituted, the Court must dismiss the action based on sovereign immunity. *See* 7

4   CMC § 2251; Fed. R. Civ. P. 12(b)(1); *Ramsey v. Muna*, 849 F.3d 858, 861 (9th Cir. 2017). In

5   *Ramsey*, the Ninth Circuit determined that the Commonwealth "does not enjoy sovereign

6   immunity in federal court with respect to claims brought under federal law." 849 F.3d at 859

7   (citing *Fleming v. Dep't of Pub. Safety*, 837 F.2d 401, 407-08 (9th Cir. 1988)). However, the

8   Ninth Circuit did not find that the same could be said for claims brought under CNMI law. *Id*. at

9   860. Thus, where CNMI law provides that its own courts "shall have exclusive original

10  jurisdiction" to hear claims arising under CNMI law, 7 CMC § 2251, the CNMI may be "sued in

11  certain circumstances, but *not* in federal court." *Id*.

12       Here, Somorang was engaged in DOC work when Mendiola asserted his grievance.

13  Specifically, in his capacity as Commander, Somorang reassured Mendiola that medications at

14  DOC will be timely distributed to him. Mendiola has otherwise not disputed this; where a party

15  fails to oppose a motion, the Court may deem such failure as an admission that the motion is

16  meritorious. *See* LR 7.1(c)(2). Based on Mendiola's lack of opposition and the fact that Somorang

17  was responding as a DOC Commander, the Court finds that Somorang was acting within the scope

18  of his employment and the CNMI may be substituted in per the GLA.

19       As a result of the CNMI's substitution, sovereign immunity of the CNMI is triggered and

20  the Court must dismiss Somorang for lack of subject matter jurisdiction for the CNMI law claims

21  of negligence and intentional infliction of emotional distress.

22

23

24

25

26

27

28

**B. Deliberate Indifference to Mendiola's Medical Needs**

In his motion, Somorang also argues that Mendiola insufficiently alleges that (1) he has a serious medical need, (2) Somorang was aware of any serious medical need, and (3) Somorang was deliberately indifferent to any serious medical needs. (Mem. P. & A. 11.) As to the first, Somorang maintains that Mendiola "does not establish a serious medical need because [he] does not allege any medical intervention to address his diagnosed medical conditions." (*Id*. at 13.) As to the second, Somorang avers that the complaint fails to show how "Somorang knew the missed medications were prescribed to treat [Mendiola's] serious underlying medical issues." (*Id*.) Rather, Somorang could not have been aware of Mendiola's "serious medical issues because the missed medications were not associated with [Mendiola's] alleged serious medical needs." (*Id*. at 13 n.2.) Finally, Somorang maintains that Mendiola has failed to establish that Somorang instructed other correctional officers to deny Mendiola's requests for medication let alone interfere with his ability to be treated. (*Id*. at 14-15.) "Instead, [Mendiola] clearly alleges that any delay or interference with his medical treatment was *not* caused by Defendant Somorang." (*Id*. at 15.) The Court addresses each of these argument in turn.

*i.    Mendiola's Serious Medical Need*

In order to prevail on an Eighth Amendment claim for inadequate medical care, an inmate must show "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). Somorang contends Mendiola "does not establish a serious medical need because [he] does not allege any medical intervention to address his diagnosed medical conditions." (Mem. P. & A. 13.) It is true that after he was diagnosed with a spinal degenerative disease on April 30, 2020 (Compl. ¶ 71), Mendiola did not indicate in his complaint that he was prescribed any medications specifically for this disease. Although this is an accurate observation,

Somorang fails to recognize that the complaint does allege Mendiola was given Naproxen 500 on an as needed basis starting in June 2020, a little over thirty days after his diagnosis. (*Id.* ¶ 75.) The complaint then alleges numerous instances starting in July 2020, which continued to April 2021 in which Mendiola missed this medication "due to erratic distribution, refusal and ignorance of prison officials" and which in each instance resulted in excruciating pain through the night. (*Id.*)

Somorang questions whether Mendiola's spinal degenerative disease and spinal arthritis diagnoses are even serious medical conditions, and relies on the Ninth Circuit case of *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) to contend that the Ninth Circuit "defin[es] a serious medical need as not just chronic pain, but a medical condition that affects one's daily activities or where a reasonable doctor would find worthy of treatment." (Mem. P. & A. 12.) Although it is correct to conclude that a serious medical need may be indicated by "the presence of a medical condition that significantly affects an individual's daily activities," that is not an exclusive definition nor a requirement to chronic and substantial pain. *McGuckin*, 974 F.2d at 1060. "[E]xamples of indications that a prisoner has a 'serious' need for medical treatment" include: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1155 (N.D. Cal. 2014) (citing *McGuckin*, 974 F.2d at 1059-60). Here, Mendiola describes his pain from his spinal degenerative disease as chronic and excruciating pain. (Compl. ¶ 71.) This alone is sufficient for the Court to find that his medical need was serious. But

here, Mendiola was also diagnosed by a doctor, which indicates that his condition was worthy of commentary. *See Gonzalez*, 67 F. Supp. 3d at 1155.

Last, he was also prescribed Naproxen 500, which according to the Mayo Clinic, is an anti-inflammatory drug only available with a doctor's prescription. [1] Although Somorang contends that Mendiola was not prescribed this medication for his spinal issues, (Mem. P. & A. 12-13), a plausible reading of his complaint supports a conclusion that he was prescribed this medication for his spinal issues. (*See* Compl. ¶¶ 54-108.) For his last entry on April 10, 2021, Mendiola wrote a grievance that he received the wrong medication for his back pain. (*Id.* ¶ 108.) In addition, the fact that he was diagnosed by a doctor and that Mendiola complained of chronic excruciating pain are sufficient allegations that Mendiola's medical need was serious.

ii.    *Somorang's Awareness of Mendiola's Serious Medical Need*

As to Somorang's allegation he was not aware of Mendiola's serious medical need, the Court finds that Mendiola alleged sufficient facts in his complaint that Somorang was aware. As previously noted, Naproxen 500 medication requires a prescription, and Mendiola alleged, "[o]nly Commanders ha[ve] access to your medication at medical office," of which Somorang is one such Commander. (*Id.* ¶ 78.) Furthermore, Somorang was aware of the missed medications as Mendiola wrote a grievance on August 6, 2020, specifically about missing medications throughout July, and "Somorang came to assure [Mendiola] that DOC will ensure proper and timely distribution of medication." (*Id.* ¶ 82.) Although the complaint does not expressly state why Mendiola was prescribed the Naproxen 500, the Court finds it is plausible Mendiola was

---

[1] The Court may take judicial notice of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Therefore, the Court takes judicial notice that Naproxen 500 is a nonsteroidal anti-inflammatory drug that is available only with a doctor's prescription. Mayo Found. for Med. Educ. & Rsch., *Naproxen (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/naproxen-oral-route/proper-use/drg-20069820?p=1, last visited Feb. 9, 2024.

prescribed the Naproxen 500 for his spinal condition as he was prescribed the medication not long after his diagnosis and his missed medications resulted in further suffering from excruciating pain similar to the six months of excruciating pain he experienced before his April 2020 diagnosis. (*Id.* ¶¶ 71, 75.) As to Somorang's actual knowledge of Mendiola's serious underlying medical issue, the complaint sufficiently alleges facts that tends to show that Somorang was aware. The complaint alleges that Mendiola was diagnosed with the disease on April 30, 2020; after suffering excruciating pain for six months, he was given Naproxen 500 as medication in June 2020; only commanders have access to his medication at the medical office and Mendiola alleges Somorang is a Commander in his complaint; Mendiola wrote a grievance on August 6, 2020, complaining of missed medications; and in response to the grievance, Somorang personally assured Mendiola that his medications would be given properly and timely. (*Id.* ¶¶ 54-108.) This line of facts Mendiola outlines in his complaint sufficiently pleads that Somorang knew of Mendiola's serious medical need.

   *iii.*   *Somorang Was Deliberately Indifferent to Mendiola's Serious Medical Needs*

   Having identified the facts in the complaint to establish Somorang's knowledge of Mendiola's serious medical needs, the Court now turns to whether Somorang was deliberately indifferent. The complaint alleges on August 6, 2020, Somorang assured Mendiola that DOC would properly and timely distribute his medication. (*Id.* ¶ 82.) Yet two days later, Mendiola's request for his medication to Officer Nick Wally was ignored, and he ended up suffering excruciating pain all night. (*Id.* ¶ 83.) The same resulted the next day for which Mendiola confronted Officer Pius Yarometal Jr., on August 9, 2020. (*Id.* ¶ 84.) And on the third day thereafter, Officer Wally again did not deliver Mendiola's medication. (*Id.* ¶ 85.) The missed medications occurred in September, including on September 20, 2020, despite Mendiola's plea

to retrieve his medication from main control because he was having severe back pain. (*Id*. ¶ 88.) These periodic missed medications continued for eight months after Somorang assured Mendiola his medications would be distributed timely, all the while experiencing severe pain. (*Id*. ¶¶ 84-108.)

       Generally, supervisory personnel cannot be held vicariously liable in a civil rights action. *See Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). Rather, a supervisory official may be liable only if he is personally involved or there is a sufficient causal connection between wrongful conduct and the constitutional violation. *Id*. Where a plaintiff does not allege a constitutional violation by any other defendant, he is precluded from alleging a supervisory defendant

> set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict injury on plaintiff; knew of the constitutional violation and failed to prevent it; or the constitutional violation resulted from a failure to properly train or supervise personnel from an official policy or custom for which defendants was responsible.

*Guathier v. Stiles*, No. EDCV 08-1488-SJO(RC), 2009 WL 1598424, at *4 (C.D. Cal. June 2, 2009), *aff'd* 402 F. App'x 203 (9th Cir. 2010) (internal citations omitted). Here, the Complaint alleges sufficient facts to show a causal connection between the officers' wrongful withholding of Mendiola's medication, and Somorang's failure to follow through with his assurance to timely distribute the medication. In particular, Mendiola alleges officers told him that only Commanders, like Somorang, could distribute his medication in addition to Somorang assuring Mendiola he would receive his medication in the future. (Compl. ¶¶ 78, 82.)

## IV.   CONCLUSION

       For the foregoing reasons, the Court GRANTS Somorang's motion for substitution of the CNMI and motion to dismiss the CNMI law tort claims but denies the motion to dismiss the § 1983 deliberate medical indifference claim under the Eighth Amendment to the U.S. Constitution

/ / /

/ /

and the claim for a violation of the CNMI Constitution's prohibition against cruel and unusual punishment.

IT IS SO ORDERED this 9th day of February 2024.

RAMONA V. MANGLONA
Chief Judge